# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MICHAEL ALLEN DEAN,

                Defendant.

**Case No. 25-CR-00166-SEH**

## OPINION AND ORDER

This matter comes before the Court on Defendant Michael Dean's opposed motion to revoke United States Magistrate Judge Mark T. Steele's detention order. [ECF No. 16]. After reviewing all the documents available in the record and considering the applicable law, the Court concludes that a hearing is not necessary to resolve the issues presented. *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019) (explaining that the Court may hold a hearing, but that a hearing is not required). For the reasons set forth below, the motion is denied.

## I. Background and Procedural History

On May 6, 2025, a federal grand jury charged Dean with receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2), and felon in possession of a firearm and ammunition, in violation

of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [ECF No. 2]. On the day of the

defendant's initial appearance, the government filed a motion for detention,

asserting that the court should detain Dean because no conditions of release

could reasonably assure the safety of any other person and the community,

and that a rebuttable presumption for detention applied. [ECF No. 5]. On

May 9, 2025, Judge Steele held a detention hearing. [ECF No. 13].

### A. The Government's Proffer

The government began the evidentiary portion of the hearing by informing

Judge Steele that it intended to proceed by proffer and asked that he take

judicial notice of the pretrial services report and amended pretrial services

report. [ECF No. 22 at 3–4].

The government first proffered that the defendant has a prior conviction

for possession of child pornography and shared details related to his arrest

and conviction for this offense. [ECF No. 22 at 4–6]. In November 2010, an

agent from the Oklahoma State Bureau of Investigation (OSBI) was

conducting an undercover investigation on Lime Wire, the peer-to-peer file-

sharing network, when the agent discovered files containing child

pornography that had been shared through an IP address associated with

Dean and his home address. [*Id*. at 4]. Based on that information, the agent

obtained a search warrant for Dean's home, where he was living with his

parents and some younger siblings. [*Id*. at 5]. Inside a bedroom that had Dean's name on its door, agents found a laptop that was later determined to contain videos and images of child pornography. [*Id*.]. Agents also found on the nightstand a marijuana pipe with a small child's bra next to it and children's panties under Dean's bed. [*Id*.].

In a post-*Miranda* interview in 2010, Dean admitted to using Lime Wire to download and watch child pornography on his laptop. [ECF No. 22 at 5]. He told agents that he had an interest in child pornography that began three or four years earlier. [*Id*.]. He said that he found his child pornography on Lime Wire by using search terms like "preteen," and that he masturbated to it. [*Id*.]. He stated that he knew it was wrong and that he had stopped downloading it one or two months earlier when he had found God. [*Id*.]. He further stated that he deleted the child pornography and was not aware that he had shared it. [*Id*.]. He claimed that he had never touched a child sexually. [*Id*.]. He further admitted that he lived at home with his parents, that he used a phone number ending in 7968 and an email address of sniper21_69@yahoo.com. [*Id*. at 5–6]. In 2011, after pleading guilty to possession of child pornography and violation of the Oklahoma Computer Crimes Act, Dean was sentenced to 10 years of imprisonment with all but 60 days of the sentence suspended. [*Id*. at 6].

The government then proffered details related to the investigation that led its current pending charges. [ECF No. 22 at 6–11]. In May 2023 WhatsApp reported to the National Center for Missing and Exploited Children that two files consistent with child sexual abuse material had been uploaded to its platform. [*Id.* at 6]. The account that uploaded the files was associated with the phone number ending in 7968 and an IP address that belonged to an internet account in the names of Dean's parents at their home address. [*Id.*]. Based on his sex offender registration, agents knew Dean was living at that address with his mother, Peggy Dean. [*Id.*]. They also understood that Dean's father had passed away in 2020. [*Id.*].

OSBI Special Agent Janell Daggett obtained a search warrant for Dean's home, which was executed on April 25, 2024 by OSBI, the Mayes County Sheriff's Office, and the Cherokee Nation Marshal Service. [ECF No. 22 at 6–7]. When officers were preparing to approach the home to execute the warrant, they saw Dean get into a car and drive away. [*Id.* at 7]. They conducted a traffic stop, finding that Dean was driving, and his mother was in the front passenger seat. [*Id.*]. Dean admitted to having methamphetamine and two pocket knives in his jean's pocket. [*Id.*]. Daggett recovered the knives and a baggy with about 2 grams of a white crystal substance that field-tested positive for methamphetamine. [*Id.*]. She also

seized a black iPhone 11 from Dean's jean's pocket and later obtained an additional search warrant to search its contents. [*Id*.].

Inside the house, officers found two firearms and a total of 231 rounds of ammunition. [ECF No. 22 at 7]. Both firearms were found in Peggy Dean's bedroom but neither firearm was secured. [*Id*.]. A 20-guage shotgun was propped against a dresser next to the bedroom door and was in plain view, visible from the living room. [*Id*.]. A loaded .38 caliber revolver was in a black holster next to the bed. [*Id*.]. Ammunition was found throughout the house, with some discovered in Dean's bedroom that still had his name on the door. [*Id*. at 7–8].

In another bedroom, agents found a casino card with Dean's name on it, multiple bongs and glass pipes, and a baggy with methamphetamine residue. [ECF No. 22 at 8]. Sitting next to the baggie in plain view were two shotgun shells. [*Id*.].

Agents also seized multiple electronic devices from the home. [ECF No. 22 at 8]. They took three iPads, four laptops, a digital camera, six thumb drives, and eight cell phones. [*Id*.]. Two of the cell phones were found taped underneath a dresser drawer. [*Id*.]. Some of the devices were forensically extracted, but several of them could not be unlocked. [*Id*.]. The devices that agents could unlock did not contain child pornography. [*Id*.]. All electronic

devices seized from the home were returned to Peggy Dean on November 20, 2024. [*Id*.].

Agents interviewed Dean and his mother the day of the search. [ECF No. 22 at 9]. Dean admitted to having a WhatsApp account but said he hardly ever used it. [*Id*.]. He said his phone number ended in 7968 and denied that he was the person in the home downloading child sexual abuse material. [*Id*.]. He said he did not know of anyone else who stayed in the house who would be downloading it. [*Id*.]. He stated that he had "open source Internet" which Daggett understood to mean internet without a password. [*Id*.]. The interview ended when Dean asked for a lawyer. [*Id*.].

Peggy Dean told Daggett that she and Dean were the only two individuals living in the home. [ECF No. 22 at 9]. She admitted that the guns were not secured in a way that would prevent Dean from accessing them. [*Id*.]. She explained that when Dean was convicted for possessing child pornography he was at work and downloading files to his laptop. [*Id*.]. He would later delete files that he did not want, which included child pornography. [*Id*. at 9–10]. When asked how Dean spent most of his time, she said he spent most of it sleeping. [*Id*. at 10].

Daggett obtained a search warrant for the iPhone 11 taken from Dean's pocket, which was using the phone number ending in 7968. [ECF No. 22 at

10]. HSI Special Agent Dustin Carter reviewed the extraction of the phone. [*Id*.]. The phone appeared to have been activated on October 11, 2019 by the email address sniper21_69@yahoo.com. [*Id*.]. During his initial review, Carter flagged a total of 903 visually unique files that he believed met the federal definition of child pornography.[1] [*Id*. at 10]. Of the 903 files, 886 were video files. [*Id*.]. Within the video files, Dean's phone contained a total of 146 infant/toddler pornography videos, including a video depicting the anal rape of a toddler. [*Id*.]. The video files also contained over 300 Bondage and Discipline, Dominance and Submission, and Sadism and Machoism (BDSM) child pornography videos. [*Id*.]. Five of the videos depicted bestiality. [*Id*.]. Carter recognized some of the images as a known series of child pornography that he had encountered in other cases. [*Id*.]. Dean possessed an approximate 17-minute montage video of these clips which included a child being bound with rope and forced to perform oral sex on an adult male and a dog. [*Id*.].

Carter discovered through metadata that some of the files containing child pornography were created before the phone was activated in 2019. [ECF No. 22 at 11]. This led Carter to believe that Dean likely restored a previous iCloud backup to the phone when he activated it and that a previous device

---

[1] Some of the files on Dean's phone appeared to have been downloaded from Telegram. [ECF No. 22 at 10]. However, at the time of the detention hearing, Carter had not yet reviewed Dean's messages or search history. [*Id*. at 11].

may have contained some of the child pornography that was present when the phone was seized on April 25, 2024. [*Id.*].

### B. The Defendant's Evidence

Defense counsel first presented witness testimony from Peggy Dean. [ECF No. 22 at 12–20]. Peggy testified that Dean had lived with her his entire life.[2] [*Id.* at 12]. She acknowledged that he was arrested and taken into custody in November 2024 because he had a new state case pending against him. [*Id.* at 13]. He spent about five months in the Mayes County Jail before eventually posting bond on May 31, 2025. [*Id.* at 13–14]. Peggy confirmed that when Dean was released he came back to live with her. [*Id.* at 14]. She testified that she did not have any knowledge of Dean using methamphetamine during the time he was living with her in April 2025, despite her comments through a phone conversation with a probation officer the day before the hearing. [*Id.* at 14–15]. She explained that she had cataract surgery the day before, had undergone anesthesia as part of that operation, and was not thinking clearly when the probation officer called and woke her up. [*Id.*]. She stated that she was feeling clearheaded during her testimony and fully understood the questions defense counsel was asking. [*Id.* at 15].

---

[2] The Court refers to Peggy Dean by her first name throughout this subsection to avoid confusion when referencing the defendant.

Peggy averred that the door to her bedroom where the firearms were found in April 2024 was locked and confirmed that it was her intention that Dean not have access to her room. [ECF No. 22 at 15–16]. She claimed that Mayes County officers told her that her possession of firearms was fine as long as they stayed on her side of the house. [*Id*. at 16]. She stated that she currently had additional firearms located in the garage of the home but acknowledged that she would not have an issue with giving the guns to another family member if Dean were released. [*Id*. at 16–17].

Peggy testified that Dean had sustained three skull fractures while he was in the Mayes County detention center. [ECF No. 22 at 17]. She explained, as a result of those injuries, Dean had bleeding on his brain that doctors believed would require surgery. [*Id*.]. She further stated that Mayes County officials brought Dean back from the hospital about 24 hours after taking him and refused to give him prescribed medication. [*Id*.]. She said she had been trying to get him an appointment with a neurologist but did not currently have one for him because she had to have surgery. [*Id*. at 17–18].

On cross-examination, the government asked Peggy about certain firearms in her home, internet access at her home, Dean's work history, and his drug use. [ECF No. 22 at 18–19]. She testified that a pistol and three long guns that were currently stored in her garage were "in plain sight" in her bedroom

during execution of the search warrant but were not seized by police. [*Id.* at 18]. She confirmed that her home still has internet access and that Dean does not currently have a cell phone. [*Id.* at 19]. She stated that Dean has not worked since his arrest in April 2024. [*Id.*]. When asked what he does during the day, Peggy said that he plays with the dog and talks with her. [*Id.*]. She stated that she did not know that he was using methamphetamine in her home before he was arrested in April 2024. [*Id.*]. She further affirmed that she had no knowledge of him using methamphetamine while he was out on bond between April and November 2024. [*Id.*].

Defense counsel next presented testimony from Charles Smallwood, the owner of Affordable Bail Bonds. [ECF No. 22 at 20–26]. Smallwood testified that he was a police officer before becoming a bail bondsman and had some experience in that role working with United States marshals and United States probation officers. [*Id.* at 21–22]. He stated that Dean had been on bond with his office since March 31, 2025. [*Id.* at 22]. He explained that the rules and conditions Dean had to follow while on bond included no internet service, no contact with minor children, and that he could not live anywhere other than where his mother resides. [*Id.* at 22–23]. He was also required to check in weekly by phone, which required his mother to call with him and then hand him her phone. [*Id.* at 23]. Smallwood testified that Dean called

every Wednesday as required and confirmed that he had no knowledge that Dean violated any rules pertaining to his bond. [*Id*.].

Smallwood further testified about Dean's desire to turn himself in on the federal warrant issued in this case. [ECF No. 22 at 23–24]. According to Smallwood, Dean came to his office on May 7th and said "I think I've got a warrant for my arrest and the federal government's looking for me. I don't want them to think I'm trying to hide from them and I don't want the state to think that I'm hiding from the federal government so I want to surrender myself." [*Id*.]. Smallwood suggested that they contact the authorities, and Dean was adamant that he turn himself in. [*Id*. at 24]. Smallwood said that he then filled out a surrender notice and walked Dean to the Mayes County Jail to forfeit his surrender bond. [*Id*.]. Smallwood testified that in his eleven years as a bondsman and over 14,000 people he had supervised he had never had a similar experience. [*Id*.]. He further stated, based on his training and experience, that he did not see anything that indicated Dean was under the influence of methamphetamine during that interaction. [*Id*. at 25].

On cross-examination, Smallwood could not recall whether Dean was bonded out with his office from April 2024 to November 2024. [ECF No. 22 at 25–26]. He confirmed that Dean was not subject to any drug testing from him or his office during the previous month. [*Id*. at 26]. Smallwood further

confirmed that neither he nor anyone from his office had been to Dean's home. [*Id*.].

### C. The Pretrial Services Report

As set out above, the government requested that Judge Steele take judicial notice of the amended pretrial services report. [ECF No. 22 at 4]. Peggy Dean verified information in the report, which showed that Dean was 39 years old, had been unemployed since January 2024, and had resided with his mother at his current address for his entire life.

According to the report, Dean graduated from high school in 2004 and earned a certification in Diesel Mechanics the same year. He reported previous employment from 2015 until January 2024 with three different employers and admitted that he struggled with gambling when he was last employed. He further reported that his employment in January 2024 ended as a result of him "sleeping on the job."

The report also detailed Dean's substance abuse history. It showed that he used alcohol socially, cannabinoids, club/designer drugs, cocaine, and hallucinogens experimentally, and had demonstrated prior abuse of methamphetamine. His mother reported that Dean was using methamphetamine as recently as April 2025.

The report further contained information about Dean's prior criminal history. It showed he had incurred four traffic tickets, a state felony conviction for violation of an Oklahoma statute via computer, and a state felony conviction for procuring, producing, distributing, or possessing juvenile pornography.

The case agent provided details of Dean's arrest during execution of a search warrant that eventually led to the pending federal charges. He explained, as agents were setting up the search warrant for the defendant's home on April 25, 2024, the defendant allegedly left and was arrested during a traffic stop. Officers found two knives and a small baggie of methamphetamine in the defendant's pocket. Additionally, agents found 200 rounds of assorted ammunition, drug paraphernalia, and baggies with a substance that appeared to be methamphetamine.

Probation found no condition or combination of conditions that would reasonably assure the safety of the community.

**D. Judge Steele's Order**

After hearing argument from both parties, Judge Steele explained his findings. First, he found the rebuttable presumption applied under 18 U.S.C. § 3142(e)(3), that there was no condition or combination of conditions that would reasonably assure the safety of any other person and the community.

13

[ECF No. 22 at 35]. Next, he recognized that he needed to determine whether Dean had presented some credible evidence to rebut the presumption. [*Id*.]. After considering the evidence presented, the testimony, and the arguments of counsel, Judge Steele found that Dean had not presented sufficient evidence to rebut the presumption. [*Id*. at 35–36]. Accordingly, he ordered Dean detained pending trial. [*Id*. at 36].

Dean moved to revoke Judge Steele's detention order and the government responded. [ECF Nos. 16, 20].

## II. Applicable Standard

"If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Under the Bail Reform Act, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the government must prove

14

risk of flight by a preponderance of the evidence, and danger to any other

person or the community by clear and convincing evidence. *Cisneros*, 328

F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure

the appearance of the [defendant] as required and the safety of any other

person and the community[,]" the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including—

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).[3]

If the Court finds probable cause to believe the defendant committed one of the offenses listed at 18 U.S.C. § 3142(e)(3), then it is presumed—subject to rebuttal—"that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3). "An offense involving a minor victim under section … 2252(a)(2)" is an offense listed at 18 U.S.C. § 3142(e)(3)(E). "Once the presumption is invoked, the burden of production shifts to the defendant." *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). Although the defendant must produce some evidence as to danger to the community to rebut the presumption, the government always bears the ultimate burden of persuasion. *Id*. at 1354–55.

## III. Analysis

Based upon its independent, *de novo*, review of the record, the Court concludes that the government has shown by clear and convincing evidence

---

[3] Unpublished Tenth Circuit opinions are not binding precedent but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1.

that there are no conditions, or combination of conditions, that will reasonably assure the safety of any other person or the community if Dean were released.

The indictment shows probable cause that Dean committed an offense involving a minor victim under § 2252(a)(2). *See United States v. Silva*, 7 F.3d 1046 (10th Cir. 1993) (table) ("The grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal … offense[.]"); *see also United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *2 (10th Cir. July 8, 2022) (finding that child pornography charges established a rebuttable presumption). Thus, the presumption applies. However, considering the testimony Dean presented at the detention hearing, the Court finds that he has rebutted the presumption of detention, and will therefore apply the § 3142(g) factors to determine if Dean should be released on conditions pending trial. But even when a defendant successfully rebuts the presumption, it remains a factor for consideration for the district court in determining whether a defendant should be detained pending trial or released on conditions. *Stricklin*, 932 F.2d at 1355.

A. *The Nature and Circumstances of the Charged Offense*s

A federal grand jury charged Dean with receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), possession of child

pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2), and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [ECF No. 2]. Dean is alleged to have received and possessed child pornography after being convicted of possessing child pornography in 2011. [ECF No. 2 at 1–3]. Therefore, Dean's alleged conduct demonstrates his engagement in repeated child pornography offenses. Moreover, if convicted on the child pornography counts, Dean faces enhanced penalties on account of his prior conviction—a mandatory minimum term of imprisonment of 15 years for receipt of child pornography, and a mandatory minimum term of imprisonment of 10 years for possession of child pornography. *See* 18 U.S.C. § 2252(b)(1), (b)(2). The Court therefore finds that Dean is alleged to have committed serious offenses that victimized minor children, and he faces a lengthy sentence if convicted. This factor weighs in favor of detention.

### B. The Weight of the Evidence

The second factor also weighs in favor of detaining Dean. The government proffered at the detention hearing that the cell phone found in Dean's pocket at the time of his arrest contained 903 files of child pornography. [ECF No. 22 at 10]. Further, agents found a shotgun inside Dean's home that was unsecured and in plain view from the living room. [*Id.* at 7]. Ammunition was

also discovered throughout the home, including inside Dean's bedroom. [*Id.* at 8]. Thus, the record before the Court indicates that the weight of the evidence is strong.[4]

*C. The History and Characteristics of the Defendant*

Dean's history and characteristics also weigh in favor of detention. He is 39 years old, has always resided in the same home with his mother, and has been a member of his community for his entire life. Dean has been unemployed since January 2024, reporting that he struggled with gambling when he was employed and lost his job because he was "sleeping on the job." Although Dean has a history of methamphetamine abuse, he has never attended substance abuse counseling and reported that he does not believe he would benefit from any such counseling. Agents allege that Dean possessed methamphetamine at the time of his arrest in 2024.

Most concerning is Dean's prior conviction for possessing child pornography. In 2010, Dean admitted to downloading and watching child pornography on his laptop. [ECF No. 22 at 5]. He told agents that he had an interest in child pornography that began years earlier, that he knew it was

---

[4] Dean enjoys the presumption of innocence whether he is detained or released. Pretrial detention is not a punishment, but a regulatory measure to protect the community. *United States v. Salerno*, 481 U.S. 739, 746 (1987). The weight of the evidence is only one factor the Court must consider, among several. 18 U.S.C. § 3142(g).

wrong, and that he had stopped. [*Id.*]. The conduct underlying the current child pornography charges is alleged to have begun in October 2019. [ECF No. 2 at 1–2]. During that time, Dean remained on a 10-year suspended sentence. [ECF No. 22 at 6]. The current charged offenses and Dean's prior conviction arise from conduct alleged to have occurred within the same home where Dean has lived with this mother. [*Id.* at 4, 6]. Allegedly, Dean utilized the same phone number and email address to possess child pornography in 2010 and again from 2019 through 2024. [*Id.* at 6, 10]. Dean was about 25 years old when he was convicted for possessing child pornography. Now he is 39 and faces allegations of possessing more than 903 files of child pornography depicting graphic and violent sexual abuse of toddlers. Thus, the current allegations depict an escalating pattern of criminal behavior.

Although Dean has demonstrated compliance with state pretrial release conditions, the Court does not find this evidence compelling. Smallwood testified that Dean was on bond with his office from March 31, 2025 to May 7, 2025. [ECF No. 22 at 22–23]. However, he admitted that Dean was not subject to any drug testing, and that no one from his office had been to Dean's home during this time. [*Id.* at 26]. Notably, Dean posted bond after his arrest in April 2024 but presented no evidence of his compliance on pretrial conditions during this period. *See State of Oklahoma v. Miachel Allen Dean,*

No. CF-2024-00095, Mayes County District Court (April 30, 2024). Dean reported to Probation that he last used methamphetamine in November 2024—while he was on pretrial release and facing state charges for drug and gun possession. Although Dean is not currently charged with any drug crime, his admitted methamphetamine use is evidence of his disrespect for the law.

Considering all the facts and circumstances, the Court finds this factor weighs in favor of detention.

D. *Nature and Seriousness of the Danger to any other Person or the Community if Defendant is Released*

The Tenth Circuit has recognized the "long-term serious physiological, emotional, and mental difficulties of children who have been sexually exploited" as a result of being a victim in child pornography. *United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001) (citing *New York v. Ferber*, 458 U.S. 747, 758–60 (1982)); *see also Kroeker*, 2022 WL 2610344, at *2 (upholding district court finding that release of defendant facing child pornography charges would pose "a high risk to the community, and particularly to minors who are unable to protect themselves") (internal quotation marks omitted). Crimes against children are among the most serious, and Dean's arguments that he never physically touched a child do not persuade the Court that he presents no danger to the community.

21

On the contrary, the evidence suggests that Dean poses a danger to the community if he is released. He proposes to return to the home where he was living with his mother when he committed his prior child pornography offense. Because agents returned all electronic devices to Dean's mother, except for Dean's cell phone, Dean would have access to those devices if he were to return to the same environment. Agents were not able to search all these devices for child pornography before returning them, because many were locked. [ECF No. 22 at 8]. Further, Dean's mother testified she was unaware of Dean's methamphetamine use until execution of the search warrant, even though officers found smoking devices and residue in plain view. [*Id.* at 8]. Although Dean is not charged with any drug crime, Peggy Dean's testimony reveals that she would not be observant enough to monitor him on pretrial release. She also fails to appreciate her son's admission of guilt for his prior conviction, as she claimed child pornography files were accidentally downloaded to Dean's computer in 2010. [*Id.* at 9–10].

All factors taken as a whole, the Court finds that the available information demonstrates by clear and convincing evidence that there are no conditions or combination of conditions that would reasonably assure the safety of the community if Dean were released.

## Conclusion

Having conducted a *de novo* review, the Court finds that the government has proven that no release conditions or combinations of conditions would reasonably assure the safety of any other person if Dean were released. Therefore, Dean will remain detained pending trial.

IT IS THEREFORE ORDERED that the defendant's Motion to Revoke Detention Order [ECF No. 16] is DENIED.

DATED this 4th day of June, 2025.

*Sara Hill*

Sara E. Hill
UNITED STATES DISTRICT JUDGE